UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHN R. HALLEMANN,          )
                                )
        Plaintiff,          )
                                )
      v.                   )     No.  4:18 CV 625 CDP
                                )
ANDREW M. SAUL, Commissioner   )
of Social Security,[1]           )
                                )
        Defendant.     )

## MEMORANDUM AND ORDER

Plaintiff John R. Hallemann brings this action under 42 U.S.C. § 405

seeking judicial review of the Commissioner's final decision denying his claim for

disability insurance benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 401, *et seq.* Because the Commissioner's final decision is supported by

substantial evidence on the record as a whole, I must affirm the decision.

### Procedural History

On January 8, 2015, the Social Security Administration denied Hallemann's

December 2014 application for DIB in which he claimed he became disabled on

August 11, 2014, because of left knee surgeries and replacement, right knee

surgeries, arthritis, left knee stiffness, depression, anxiety, learning disability, and

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to
Fed. R. Civ. P. 25(d), Saul is substituted for Deputy Commissioner Nancy A. Berryhill as
defendant in this action.

trouble reading and writing. A hearing was held before an administrative law judge (ALJ) on November 10, 2016, at which Hallemann, his spouse, and a vocational expert testified. On June 1, 2017, the ALJ denied Hallemann's claim for benefits, finding that vocational expert testimony supported a conclusion that Hallemann could perform work that exists in significant numbers in the national economy. On February 15, 2018, the Appeals Council denied Hallemann's request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, Hallemann claims that the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, Hallemann argues that the ALJ erred in finding him to have engaged in substantial gainful activity from August to December 2014, and further erred in finding him to have a limited education. Hallemann claims he is illiterate. Hallemann also argues that the ALJ erred in finding that his complaints of knee pain were not consistent with other evidence of record. Hallemann also contends that the ALJ's finding that he can perform light work is inconsistent with the specific limitations found by the ALJ. Finally, Hallemann argues that the Appeals Council failed to consider new, material, and relevant evidence submitted after the ALJ's decision. Hallemann asks that I reverse the ALJ's decision and award benefits or, alternatively, remand for further consideration.

For the reasons that follow, the ALJ did not err in his determination.

## Medical Records and Other Evidence Before the ALJ

When Hallemann filed his application for DIB, he was thirty-nine years old. He has an 8th grade education. Hallemann has worked as a laborer since 1999, going up and down ladders and stairs on a daily basis while carrying heavy loads of up to 100 pounds. He began reporting knee problems in the early 2000's, when he was in his late twenties, and thereafter had several arthroscopic surgeries on both knees. In August 2014, he had a total left knee replacement. Hallemann claims that he has been unable to work since the August 2014 surgery because of pain, swelling, and instability of his left knee, as well as continued problems with his right knee. He also claims that his depression worsened in November 2014 when he could not return to work.

Both Hallemann and the Commissioner have provided the Court with separate statements of fact summarizing the medical records and other evidence of record. Each party objects to, denies, or admits with several qualifications the statement provided by their opponent. Given the numerous discrepancies between the parties' statements, I cannot adopt them for purposes of this memorandum. Instead of providing an independent and comprehensive summary of the record, however, I will discuss only those facts as needed from the record to address the parties' specific arguments.

**Discussion**

A.    <u>Legal Standard</u>

To be eligible for DIB under the Social Security Act, Hallemann must prove

that he is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001);

*Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).

The Social Security Act defines disability as the inability "to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if his

physical or mental impairment or impairments are of such severity that he is not

only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists

in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner engages in a five-step evaluation process to determine

whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482

U.S. 137, 140-42 (1987).  The first three steps involve a determination as to

whether the claimant is currently engaged in substantial gainful activity; whether

he has a severe impairment; and whether his severe impairment(s) meets or

medically equals the severity of a listed impairment.  At Step 4 of the process, the

ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform his past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process). If the claimant is unable to perform his past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has nonexertional limitations, the Commissioner may satisfy his burden at Step 5 through the testimony of a vocational expert. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402

U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010).

Substantial evidence is less than a preponderance but enough that a reasonable

person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968.

Determining whether there is substantial evidence requires scrutinizing analysis.

*Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

      I must consider evidence that supports the Commissioner's decision as well

as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590

F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to

draw two inconsistent conclusions and the Commissioner has adopted one of those

conclusions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696

F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision

merely because substantial evidence could also support a contrary outcome.

*McNamara*, 590 F.3d at 610.

B.    The ALJ's Decision

      The ALJ found that Hallemann met the requirements of the Social Security

Act through December 31, 2019, and that he engaged in substantial gainful activity

through December 31, 2014, but not thereafter. The ALJ found that Hallemann's

osteoarthritis of the left knee, status post left total knee replacement, right knee

chondromalacia, anxiety, and depression were severe impairments but that they did

not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P,

Appendix 1. (Tr. 286-87.) The ALJ found that Hallemann had the RFC to perform light work but with the following limitations:

> [T]he claimant can lift up to 15 pounds occasionally; lift/carry up to 10 pounds frequently. He can stand/walk for about two hours and sit for up to six hours in an eight hour work day, with normal breaks. He can never climb ramps, stairs, ladders, ropes or scaffolds. He can occasionally balance with a hand held device as in a cane. He can occasionally stoop and crouch, but never kneel or crawl. He should avoid unprotected heights and hazardous machinery. His work is limited to simple, routine and repetitive tasks. His work should be in a low stress job, defined as having only occasional changes in the work setting.

(Tr. 288-89.) The ALJ determined that Hallemann's RFC precluded him from performing his past relevant work as a mixing foreman. (Tr. 296.)

Considering Hallemann's RFC, age (younger individual), work experience, and limited education, the ALJ found vocational expert testimony to support a conclusion that Hallemann could perform work as it exists in significant numbers in the national economy, and specifically, as a hand packer or production worker/ assembler. The ALJ thus found Hallemann not to be under a disability from August 11, 2014, through the date of the decision. (Tr. 296-97.)

## C.    Substantial Gainful Activity

A social security claimant will not be found disabled if he is engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1571. "Substantial gainful activity means work that — (a) Involves doing significant and productive physical or mental duties; and (b) Is done (or intended) for pay or profit." 20 C.F.R. §

404.1510. For purposes of determining substantial gainful activity, the Social Security Administration's primary consideration is the earnings derived from work activity. "We will use your earnings to determine whether you have done substantial gainful activity unless we have information from you, your employer, or others that shows that we should not count all of your earnings." 20 C.F.R. § 404.1574(a)(1). Income not directly related to a claimant's productivity is not considered. 20 C.F.R. § 404.1574(a)(2).

A claimant whose average monthly earnings exceed the amount set out in the guidelines is presumed to have engaged in substantial gainful activity. *Keyes v. Sullivan,* 894 F.2d 1053, 1056 (9th Cir.1990); 20 C.F.R. § 404.1574(b)(3)(i). The claimant may rebut this presumption, however, by showing that the earnings are unrelated to his productivity. *Schlosser v. Astrue*, 546 F. Supp. 2d 664, 666 (E.D. Mo. 2007) (citing *Anderson v. Heckler,* 726 F.2d 455, 457 (8th Cir.1984)); *see also* 20 C.F.R. § 404.1574(a)(2). The burden remains on the claimant to show that he did not engage in substantial gainful activity and was continuously disabled during the time claimed. *Schlosser*, 546 F. Supp. 2d at 666. For the year 2014, the threshold average monthly earnings for purposes of determining substantial gainful activity was $1070.[2]

Hallemann's earnings records show that during the third quarter of 2014

---

[2] Soc. Sec. Admin., *Substantial Gainful Activity*, https://www.ssa.gov/oact/cola/sga.html (last visited June 21, 2019).

(July-September 2014), his employer paid him wages totaling $8526; and during the fourth quarter (October-December 2014), his employer paid him wages totaling $8500. (Tr. 583.) Because the average monthly earnings during these periods exceed $1070, Hallemann bears the burden of showing that these earnings are unrelated to productivity. For the following reasons, the ALJ did not err in finding that Hallemann failed to meet this burden.

First, Hallemann submitted statements to the ALJ showing that he obtained an $8500 loan from his employer's profit sharing plan. The loan was distributed, however, in September 2011. (Tr. 587-89.) Hallemann also argued that he received deferred compensation during the relevant period. The earnings records show, however, that deferred compensation for all of 2014 totaled $995.63. (Tr. 581.) Even if Hallemann received this compensation in either the third or fourth quarter and that amount was deducted from his wage earnings, Hallemann's remaining average monthly earnings continue to exceed the guideline amount. Finally, Hallemann testified that he received short-term disability from his employer during the relevant period. (Tr. 457.) Notably, this argument is contrary to his representations that the earnings are from deferred compensation and his $8500 loan.

The ALJ provided Hallemann additional time to obtain paperwork from his employer to clarify the character of the wages earned in the third and fourth

quarters of 2014 (Tr. 500-01), but the only information Hallemann provided involved the $8500 loan in 2011. This was insufficient to meet his burden. Accordingly, the ALJ did not err in concluding that Hallemann engaged in substantial gainful activity through December 2014.

D.    Limited Education

Hallemann claims that he is illiterate because he cannot read or write, and that the ALJ erred in finding him to have a limited education.

Under the Regulations, "[i]lliteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(b)(1). The Regulations define "limited education" as having "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 404.1564(b)(3). The Social Security Administration generally considers "that a 7th grade through the 11th grade level of formal education is a limited education." *Id.*

Hallemann has an 8th grade education. When he was twelve years old, he obtained the following IQ scores upon taking the WISC-R test: verbal 87, performance 104, full scale 94. (Tr. 632.) Scores of 80 to 89 are in the low

average range, and scores of 90 to 109 are in the average range. "[A] person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning." *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001). In his function report completed in December 2014, Hallemann reported that he is able to drive and drives a car when he travels. (Tr. 621.) He testified at the administrative hearing in November 2016 that he drives once or twice a week and has a driver's license. (Tr. 451-52.) To obtain a driver's license, a person ostensibly must complete a written exam. *See Howard v. Massanari*, 255 F.3d 577, 584 (8th Cir. 2001). Hallemann also reported in his function report that he is able to pay bills, handle a savings account, count change, and use a checkbook and money orders (Tr. 621), tasks that necessarily require the ability to perform simple math.[3]

The record contains evidence pointing to Hallemann's ability to read or write as well as his ability to perform simple math. Although there is also evidence that Hallemann had difficulty with reading and writing while in school, I must defer to the ALJ's decision if substantial evidence supports his conclusion. Because there is sufficient evidence to support the ALJ's decision that Hallemann had a limited education and was not illiterate, the ALJ did not err in this

---

[3] Mrs. Hallemann assisted in the completion of the function report. At the administrative hearing, however, she testified that they no longer have bank accounts and that, if they did, she would have to manage the checkbook because of her spouse's inability to do simple math. (Tr. 482-83.)

determination.  *See Howard*, 255 F.3d at 585.

E.     Consistency of Subjective Complaints of Knee Pain[4]

Hallemann claims that the ALJ failed to consider medical evidence that was consistent with his complaints of knee pain and thus erred in discounting his subjective complaints of such pain.

For purposes of social security analysis, a "symptom" is an individual's own description or statement of his physical or mental impairment(s).  SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).  If a claimant makes statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record.  *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including the claimant's prior work record; daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.  *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th

---

[4] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).  The factors to be considered in evaluating a claimant's statements, however, remain the same.  *See id*. at *13 ("Our regulations on evaluating symptoms are unchanged.").  *See also* 20 C.F.R. § 404.1529. This new ruling applies to the Commissioner's final decisions made on or after March 28, 2016.

Cir. 1984) (subsequent history omitted).  If the ALJ finds the statements to be inconsistent with the evidence of record, he must make an express determination and detail specific reasons for the weight given the claimant's testimony.  SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).  Here, after finding at Step 3 of the sequential analysis that Hallemann's impairments did not meet the criteria for listing-level disability, the ALJ evaluated Hallemann's statements of symptoms and assessed his RFC.  The ALJ addressed each of the *Polaski* factors and made specific findings that Hallemann's claimed symptoms were inconsistent with the record.  Because these findings are supported by substantial evidence on the record as a whole, I must defer to the ALJ's determination.  *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

Contrary to Hallemann's assertion, the ALJ thoroughly summarized the medical evidence of record with respect to Hallemann's complaints of knee pain. The ALJ noted doctors' observations that after knee replacement surgery, Hallemann took a significant amount of narcotic medication, had limited flexion in the left knee to 90 degrees,[5] and sometimes used a cane.  The ALJ noted Hallemann's reports of significant pain to his physicians and that a nerve block

_____

[5] Normal range of motion for knee flexion is 137 to 139 degrees.  Center for Disease Control & Prevention, *Normal Joint Range of Motion Study*, https://www.cdc.gov/ncbddd/jointrom/index.html (last reviewed Mar. 28, 2019).

was placed for the pain.  The ALJ noted that Hallemann underwent sedated manipulation during which flexion of the left knee was achieved to 120 degrees but that range of motion nevertheless remained limited.  He also noted reports of swelling and tenderness as well as intermittent reports of increased pain.

The ALJ also noted, however, and the record shows, that despite his complaints of significant pain, Hallemann refused his doctor's referral to a pain specialist.  The ALJ noted that Hallemann reported in October 2014 that his pain was resolving, that he was progressing well with physical therapy, and ambulated with a non-antalgic gait.  He was released to work without restriction in November 2014.  The ALJ also noted that while Hallemann would occasionally report his pain to be at a level 6 on a scale of one to ten, he reported on several occasions that his pain was decreasing and at a level 3.  The record also shows that Hallemann reported to his physician in April 2015 that his pain was manageable with treatment (Tr. 915), in August 2015 that his pain medications worked well (Tr. 912), and in November 2015 that medication controlled his pain (Tr. 906).  An impairment that can be controlled by treatment or medication is inconsistent with a claim that the impairment is disabling.  *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014).  The ALJ noted physical examinations to show no abnormalities other than mild to moderate swelling, that the knee was stable, and that Hallemann had a normal gait and station.  Indeed, examination in July 2016 showed normal tone and

motor strength, normal movement, normal joints, and no malalignment or tenderness. (Tr. 889.) In September 2016, although Hallemann complained of pain, swelling, stiffness, and limited range of motion, musculoskeletal examination was normal. (Tr. 877.) *See Halverson,* 600 F.3d at 933 (subjective complaints inconsistent with several examinations that showed no abnormalities). The ALJ also noted that examination in November 2016 showed that motor strength of the knee was 4/5 and flexion was to 110 degrees. Although he had a slightly lumbering gait, Hallemann could walk on his heels and toes and he had relatively good balance.

The ALJ thoroughly reviewed Hallemann's testimony and the other evidence of record and, in a manner consistent with and as required by *Polaski*, evaluated Hallemann's subjective statements of knee pain and articulated specific reasons to find that they were inconsistent with the record. While, as Hallemann contends, there is some evidence consistent with his claimed symptoms, I cannot say that the ALJ's determination was unsupported in light of the objective medical and other evidence in the record as a whole. *Halverson*, 600 F.3d at 933. Because the ALJ's determination is supported by good reasons and substantial evidence on the record as a whole, I must defer to it. *Julin*, 826 F.3d at 1086.

F.      RFC Finding of Light Work

The ALJ found that Hallemann could perform a limited range of light work,

but Halleman claims that the specific limitations set out in the RFC are inconsistent with the ability to perform light work. Hallemann does not challenge the specific limitations; only that they are inconsistent with light work.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1467(b). "To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." *Id.*

The ALJ here did not find that Hallemann could perform "a full or wide range" of light work. So Hallemann's inability to lift 20 pounds or engage in a "good deal of walking or standing" does not preclude a finding that he can perform some light work when his specific limitations are taken into consideration. *See Jones v. Chater*, 72 F.3d 81, 82 (8th Cir. 1995). And that is what the vocational expert did here. In response to the ALJ's hypothetical that included the specific limitations set out in the RFC, including the occasional use of a cane for balance, the vocational expert identified jobs that such a person could perform. An ALJ may properly assume that the expert framed his answer based on the factors the ALJ told him to take into account, *Whitehouse v. Sullivan*, 949 F.2d 1005, 1006 (8th Cir. 1991), and nothing shows that the expert failed to do so here.

Moreover, in response to the hypothetical, the expert described jobs performed at the sedentary level of exertion (Tr. 490-93), and it was these jobs the ALJ concluded in his decision that Hallemann could perform (Tr. 297). This conclusion is consistent with the specific limitations set out in the RFC and the finding that Hallermann could perform a limited range of light work. *See* 20 C.F.R. § 404.1568(b) (ability to perform light work includes ability to perform sedentary work). Because the vocational expert limited his opinion to reflect sedentary work only, his testimony "was a perfectly acceptable basis for the [ALJ's] conclusions." *Jones*, 72 F.3d at 82.

The specific limitations set out in the ALJ's RFC are not inconsistent with an ability to perform a limited range of light work. Regardless, because the vocational expert testified to only sedentary work and the ALJ relied on this testimony to conclude that Hallemann could perform other work in the national economy, any perceived error in finding that Hallemann could perform light work was harmless. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (declining to remand for alleged error in opinion when error had no bearing on the outcome).

G.    Records Submitted to Appeals Council

When the ALJ rendered his decision on June 1, 2017, the record evidence before him included Hallemann's education records as well as medical records dated through November 2016. With his request for review of the ALJ's decision,

Hallemann submitted to the Appeals Council additional medical records dated April 2005 through October 2017, which the Appeals Council determined not to consider. Hallemann contends that the Appeals Council erred in failing to consider certain of these additional records, and specifically, records of his September 2017 suicide attempt with hospitalization and records of an August 2010 injury resulting in limited use of his right arm. For the following reasons, the Appeals Council did not err.

The Appeals Council will review an ALJ's decision if it receives additional evidence that is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Failure to consider such evidence constitutes a basis for remand by a reviewing court. *Whitney v. Astrue*, 668 F.3d 1004, 1006 (8th Cir. 2012). If the additional evidence does not relate to the period on or before the date of the ALJ's decision, the Appeals Council will send a notice to the claimant that explains why it did not accept the additional evidence and advises the claimant of his right to file a new application. 20 C.F.R. § 404.970(c).

1. *September 2017 Hospitalization*

Hallemann was admitted to the emergency room at St. Anthony's Medical Center on September 2, 2017, for worsening depression and suicidal ideation with

a plan.[6]  Hallemann reported that he felt worthless and wanted to end his life.

Hallemann reported that his marriage was failing, his son was leaving for the

military and his son's wife and child were moving, he had chronic pain, his

lifestyle changed after knee surgery in 2014, and he has had no earned income for

three years.  It was noted that he had run out of his depression medications a few

weeks prior.  Hallemann reported that he had attempted suicide by overdose three

times within the past year, with his last attempt being a couple of months prior to

this admission.  Upon admission, Hallemann was restarted on his medications,

including Effexor and Seroquel.  He was discharged from the hospital on

September 7.  Mental status examination upon discharge was normal and he was

no longer suicidal.  His discharge mental diagnosis was major depressive disorder,

recurrent, severe, without psychotic features.  (Tr. 103-29.)[7]

The Appeals Council determined that this evidence did not relate to the

period on or before the date of the ALJ's decision, that is, on or before June 1,

2017, and it therefore did not consider the evidence in its determination not to

review the ALJ's decision.  (Tr. 2.)  The Appeals Council did not err in declining

to consider this evidence.

---

[6] After being contacted by Hallemann's wife, police found Hallemann in a park on a bridge with a plan to jump.

[7] Hallemann cites to Tr. 111 to support his claim that new evidence of his September 2017 suicide attempt and hospitalization shows a disabling mental impairment.  (ECF 18 at p. 12.)

Evidence submitted to the Appeals Council is material when it relates to the claimant's condition for the time period for which benefits were denied, and not to "after-acquired conditions or post-decision deterioration of a pre-existing condition." *Bergmann v. Apfel,* 207 F.3d 1065, 1069-70 (8th Cir. 2000). *See also Jones v. Callahan,* 122 F.3d 1148, 1154 (8th Cir. 1997) (new evidence concerning subsequent deterioration of a previously non-disabling condition is not material).

Here, the new evidence shows that three months after the ALJ's decision, Hallemann's depression significantly deteriorated with the occurrence of significant life events (*e.g.*, failing marriage, son entering military, grandchild moving away) and after he had run out of medication. Evidence of Hallemann's mental impairment as it existed on or before June 1, 2017, however, shows that it was not of such a debilitating nature; nor was it in a progressive state such that the September 2017 episode necessarily portrays Hallemann's condition as it existed during the relevant period. Instead, the evidence shows that Hallemann had a history of anxiety and depression, that he was prescribed psychotropic medication beginning in November 2014, that he had thoughts of suicide in March 2015 but no plan, that he began receiving psychiatric treatment through COMTREA in March 2015, that he thereafter had no suicidal thoughts, that mental status examinations were consistently normal, and that his general practitioner consistently described him as happy and smiling during several appointments – even those appointments

when he complained of significant knee pain.  At no time prior to the ALJ's decision did Hallemann exhibit depressive symptoms near or at the level of severity he experienced in September 2017.  To support remand, "the additional evidence must not merely detail . . . post-decision deterioration of a pre-existing condition." *Bergmann*, 207 F.3d at 1068-69.

Nor does the evidence show that the deterioration of Hallemann's depression necessarily occurred before the date of the ALJ's decision in June 2017.  *Cf. Bergmann*, 207 F.3d at 1070 (additional evidence of post-decision deterioration outlined the progression of the claimant's condition from before the date of the ALJ's decision).  Indeed, the evidence of record, including the additional records submitted to the Appeals Council, contains no medical or other evidence supporting Hallemann's September 2017 report that he had attempted suicide at any time within the previous year or that he experienced any exacerbation of depressive symptoms.  If Hallemann's mental impairment had indeed deteriorated after June 1, 2017, his remedy is to file a new application.

2.    *Right-Arm Limitations*

Hallemann was admitted to the emergency room at Jefferson Regional Medical Center on August 26, 2010, after air from a high-pressure hose impacted his right forearm, removing superficial layers of skin and embedding dirt and metal fragments into the skin.  Hallemann reported having a burning-type pain.  The site

was cleaned.  Upon discharge that same date, Hallemann was instructed to take pain medication and to keep the injury site clean.  He was released to return to work the next shift and was instructed to not use his right arm at work until cleared by an occupational physician or hand surgeon if he was referred to such doctors. (Tr. 348-50.)[8]  I see nothing in the record showing that Hallemann was so referred.

The Appeals Council determined that this evidence did not show a reasonable probability that it would change the outcome of the decision.  It therefore did not consider the evidence in its determination not to review the ALJ's decision.  (Tr. 2.)  The Appeals Council did not err in this determination.

The record shows that Hallemann actively and successfully worked with his claimed right-arm impairment through August 2014, and no evidence of record demonstrates a deterioration of this condition at any time after the alleged onset date.  Where a claimant effectively works with his impairment over a period of time and there is no indication that his condition significantly deteriorated on or after the alleged onset date of disability, it is reasonable to conclude that the impairment is not disabling.  *See Goff*, 421 F.3d at 792-93.  Nor does the medical evidence show that Hallemann complained of or sought treatment for any limiting right-arm impairment on or after his alleged disability onset date.

Accordingly, because this new evidence would not have changed the

---

[8] Hallemann cites to Tr. 349 to support his claim that new evidence shows right-arm limitations. (ECF 18 at p. 12.)

outcome of the proceeding, the Appeals Council did not err in failing to consider it. 20 C.F.R. § 404.970(a)(5).

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, I may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id.*; *see also Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

For the reasons set out above on the claims raised on this appeal, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Hallemann was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, the decision must be affirmed. *Davis,* 239 F.3d at 966.

Therefore,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**AFFIRMED**, and plaintiff John R. Hallemann's complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered herewith.



_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 4th day of September, 2019.